HIN, L.L.C., APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL.,
APPELLEES; BEDFORD BOARD OF EDUCATION, APPELLANT.

[Cite as *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*,
124 Ohio St.3d 481, 2010-Ohio-687.]

*Taxation — R.C. 5713.03 — When a property has been the subject of two arm's-length sales between a willing seller and a willing buyer within a reasonable length of time either before or after the tax lien date, the sale occurring closer in time to the tax lien date establishes the true value of the property for taxation purposes — In determining the date a sale of property occurs for the purpose of establishing the true value of property pursuant to R.C. 5713.03, the auditor should use the date that the real property conveyance fee statement is filed in the auditor's office as the sale date of the property.*

(No. 2008-2408 — Submitted November 18, 2009 — Decided March 4, 2010.)

APPEAL from the Board of Tax Appeals, No. 2006-A-712.

_____

SYLLABUS OF THE COURT

1. When a property has been the subject of two arm's-length sales between a willing seller and a willing buyer within a reasonable length of time either before or after the tax lien date, the sale occurring closer in time to the tax lien date establishes the true value of the property for taxation purposes.

2. In determining the date a sale of property occurs, only for purposes of establishing the true value of property pursuant to R.C. 5713.03, the auditor should use the date that the real property conveyance fee statement is filed in the auditor's office as the sale date of the property.

_____

**O'DONNELL, J.**

{¶ 1}   In this case, two sales of the same property occurred within a few months of the tax lien date, one prior and one subsequent to it, and we are called upon to provide guidance as to which sale better represents the true value of the property and to clarify when each sale occurred and what date the auditor should use to determine true value.  Specifically, we address whether the Board of Tax Appeals ("BTA") correctly determined the true value of the property, consisting of 34.5784 acres improved with a 78,500-square-foot office building, located at 17500 Rockside Road in Bedford, Ohio, to be $4,790,000, the amount that the BTA calculated that JBK Cuyahoga Holdings L.L.C. paid for it in December 2003, before the tax lien date, as opposed to $7,400,000, the amount that HIN, L.L.C., paid for it in April 2004, several months after the tax lien date.

{¶ 2}   R.C. 5713.03 provides that in determining the true value of a parcel of real estate that has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time *either before or after the tax lien date*, the auditor shall consider the sale price to be the true value for taxation purposes.  Two specific issues are presented in this case: first, when a property has been the subject of two transfers within a few months of the tax lien date, which of the two sales should be used by the auditor to establish the property's true value, and second, whether the auditor should consider the date on the purchase agreement, the date the deed was signed, the date of the closing, the date the real property conveyance fee statement is filed in the auditor's office, or the date of recording the transfer of the property as the date of sale for taxation purposes.

{¶ 3}   For purposes of determining the true value of property according to R.C. 5713.03, the auditor should use the date that the real property conveyance fee statement is filed in the auditor's office as the sale date of the property.  In this case, because the December 2003 sale occurred closer in time to the tax lien date

than the April 2004 sale, the BTA reasonably and lawfully determined the true value of the property to be $4,790,000, and we therefore affirm that decision.

**Facts and Procedural History**

{¶ 4}  Prior to September 8, 2003, Tops Markets, L.L.C. agreed to sell 36 acres, including the property at issue, to U.S. Bank for $4,900,000.  Thereafter, U.S. Bank agreed to assign its interest in the purchase contract to JBK Properties, Inc.  At the end of September, Tops Markets and JBK Properties signed a purchase and sale agreement at the agreed price of $4,900,000; JBK Properties agreed to purchase the property contingent upon U.S. Bank's agreement to lease it and the bank's ability to obtain various incentives from the city of Bedford.  The parties subsequently amended the agreement to require a closing on or before December 30, 2003.

{¶ 5}  On November 1, 2003, U.S. Bank agreed to a 15-year, four-month lease of the property from JBK Cuyahoga Holdings L.L.C. ending on January 31, 2019, with an option to extend the lease for two additional five-year terms.  The lease provided that U.S. Bank would be responsible to pay the real estate taxes, insurance, maintenance, and utilities for the property, but it also obligated JBK Cuyahoga to make an upfront, lump-sum payment of $739,470 to the bank for improvements to the premises and relocation expenses.  U.S. Bank subsequently agreed to pay more rent for the office building in exchange for JBK Cuyahoga's consent to terminate a separate lease for the warehouse on a 2.3911-acre parcel, which JBK Cuyahoga had agreed to build.

{¶ 6}  On December 24, 2003, Thomas M. Fitzgerald, an officer of Tops Markets, signed deeds to the 34.5784-acre and 2.3911-acre parcels.  JBK Cuyahoga presented the deeds and the real property conveyance fee statement to the auditor on December 30, 2003, two days prior to the January 1, 2004 tax lien date, and recorded the deeds the same day.

**{¶ 7}** Thereafter, in January 2004, in an unrelated situation, Scott Revolinski, a broker with RFP Commercial, contacted JBK Cuyahoga on behalf of HIN, L.L.C., a corporation interested in purchasing property with a triple net lease[1] to complete a likekind exchange pursuant to Section 1031, Title 26, U.S.Code ("1031 Exchange").[2] On February 26, 2004, as amended on March 25, 2004, JBK Cuyahoga accepted an offer from HIN to purchase the 34.5784-acre parcel for $7,400,000, and on April 1, 2004, JBK Cuyahoga accepted an offer from HIN to purchase the 2.3911-acre parcel for $110,000. On April 29, 2004, John Kuhn, principal of JBK Cuyahoga, signed deeds conveying both parcels to HIN. The next day, HIN presented the deeds and the real property conveyance fee statement to the auditor and recorded the deeds.

**{¶ 8}** The auditor of Cuyahoga County, Frank Russo, assessed the true value of the 34.5784-acre parcel for tax year 2004 as $7,848,400. HIN objected and filed an original complaint challenging the valuation of the property with the Cuyahoga County Board of Revision. Subsequently, the Bedford Board of Education filed a counter-complaint seeking to retain the assessed value. After considering the evidence, the Cuyahoga County Board of Revision found the true value to be $7,848,400. HIN then appealed that decision to the BTA.

**{¶ 9}** The BTA found that two sales of the property had occurred. The transfers in the first sale, to JBK Cuyahoga, were recorded on December 30,

---

1. "Under a triple net lease, the tenant is responsible for paying utilities, maintenance, real estate taxes, and insurance." *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 3, fn.1, citing The Appraisal of Real Estate (Appraisal Institute, 12th Ed.2001) 477.

2. " 'The concept behind a 1031 exchange is that, when a property owner sells a property and reinvests its proceeds into another property, any economic gain has not been realized in a way that generates funds to pay any tax.' *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Jan. 13, 2009), BTA No. 2006-T-1804, at 7. Accordingly, the Internal Revenue Code defers the taxation of any gain from the sale of the property in this situation. Id. at 6." *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 8.

2003, and in the second sale, to HIN, on April 30, 2004. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision* (Nov. 18, 2008), BTA No. 2006-A-712, at 5. Because the December 30, 2003, transfer occurred closer in time to January 1, 2004, the tax lien date, the BTA considered it the better indicator of the true value of the property for taxation purposes. Id. at 6. The BTA therefore ordered the auditor to assess the true value of the property at $4,790,000, which reflected the $4,900,000 sale price minus $110,000 paid for the 2.3911-acre parcel in April 2004. Id. at 10, fn. 4.

{¶ 10} The Bedford Board of Education appealed the BTA's decision to this court, contending first that the December 2003 sale price does not establish the true value of the property because it does not reflect any property value increase attributable to the long-term lease to U.S. Bank that encumbered the property on the tax lien date. Second, Bedford argues that the BTA improperly relied on the recording dates of the deeds, rather than the dates the parties actually negotiated the sale prices, when it determined that the December 2003 sale occurred closer in time to the tax lien date than the April 2004 sale; thus, Bedford asserts that the "sale price which was closer in time to the tax lien date was the sale in 2004." Third, Bedford maintains that the BTA's decision is internally inconsistent because it relied on the December 2003 sale price to value the 34.5784-acre parcel but used the April 2004 sale price to value the 2.3911-acre parcel. Lastly, Bedford claims that the BTA has jurisdiction to use the April 2004 sales price of $7,400,000 to determine the true value of the property for tax year 2005 pursuant to R.C. 5715.19(D), which relieves a party of the need to file a new complaint for subsequent tax years until the original complaint is finally determined.

{¶ 11} HIN urges that the December 2003 sale, being closer in time to the tax lien date, provides a better indication of the property's value as of the January 1, 2004 tax lien date. It further contends that neither the date that the buyer and

seller agreed to the sale price nor the date that the parties executed the sales contract should be used in determining whether the December 2003 or the April 2004 sale is closer in time to the tax lien date because a sale cannot be deemed to have been completed until a closing occurs. HIN also maintains that this court lacks jurisdiction to consider the value of the property for tax year 2005 because that matter was not part of the notice of appeal and therefore is not properly before the court.

{¶ 12} Thus, this court is called upon to decide whether the BTA correctly determined that the December 2003 sale should be used to establish the true value of the property as of January 1, 2004, the tax lien date.

### Valuation of Real Property for Taxation Purposes

{¶ 13} Pursuant to R.C. 5717.04, this court reviews a decision of the BTA to determine whether it is reasonable and lawful. And as we indicated in *Strongsville Bd. of Edn. v. Wilkins*, 108 Ohio St.3d 115, 2006-Ohio-248, 841 N.E.2d 303, ¶ 7, a decision of the BTA will be affirmed if it correctly applies the law.

{¶ 14} R.C. 5713.03 sets forth how real estate is to be valued for tax purposes: "In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer *within a reasonable length of time, either before or after the tax lien date,* the auditor *shall* consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." (Emphasis added.)

{¶ 15} In construing a statute, we must ascertain and give effect to the intent of the legislature. *Dircksen v. Greene Cty. Bd. of Revision*, 109 Ohio St.3d 470, 2006-Ohio-2990, 849 N.E.2d 20, ¶ 16. Determining this intent requires the court "to read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton,* 111

Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. When the statutory text is unambiguous, we apply it as written. *Dircksen* at ¶ 17.

{¶ 16} R.C. 323.11 defines the tax lien date as the first day of January annually. Accordingly, as this court stated in *Freshwater v. Belmont County Bd. of Revision* (1997), 80 Ohio St.3d 26, 29-30, 684 N.E.2d 304, "the first day of January of the tax year in question is the crucial valuation date for tax assessment purposes." In this case, January 1, 2004, is the relevant valuation date, and the parties do not differ on this point.

{¶ 17} The statutory factors to be considered in determining the true value of property for taxation purposes pursuant to R.C. 5713.03 are whether the property has been the subject of an arm's-length sale, whether that sale occurred between a willing seller and a willing buyer, and whether that sale occurred within a reasonable length of time either before or after the tax lien date.

{¶ 18} This court has construed R.C. 5713.03 in *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, and has held that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " Id. at ¶ 13, quoting R.C. 5713.03.

{¶ 19} While we continue to adhere to the principle of law enunciated in *Berea*, that case is distinguishable from this case because *Berea* involved only one sale, which occurred prior to the tax lien date, and our review there chiefly concerned whether that sale had occurred within a reasonable length of time prior to the tax lien date, such that the auditor should be required to consider the sale price to be the true value of property for taxation purposes. Id. at ¶ 16. We concluded that the auditor could not use other evidence of value to determine true value when a sale had occurred within a reasonable length of time from the tax lien date; therefore, the recency of the sale provided a basis for the auditor to use

the sale price as the true value of the property. Id. at ¶ 13. However, this case involves two sales, one occurring prior to the tax lien date and one occurring subsequent to the tax lien date, and we are called upon to determine which sale should be used as evidence of the true value.

{¶ 20} When a property has been the subject of two arm's-length sales between a willing seller and a willing buyer within a reasonable length of time either before or after the tax lien date, the sale occurring closer in time to the tax lien date establishes the true value of the property for taxation purposes. This principle emanates from R.C. 5713.03, which presupposes that an arm's-length sale close in time to the tax lien date accurately indicates the value of property as of that date. It follows that when a property has been the subject of two arm's-length sales between willing sellers and willing buyers, the sale occurring closer in time to the tax lien date provides a more accurate indication of the true value of the property as of the tax lien date than does a sale occurring more remotely in time from that date.

{¶ 21} Bedford's contention that the date on which the parties agreed to a sale price is a better date to use for determining the proximity of a sale to the tax lien date is not well taken. Legal title to real property transfers from the seller to the buyer with the delivery and acceptance of an executed deed. See *Wayne Bldg. & Loan Co. of Wooster v. Yarborough* (1967), 11 Ohio St.2d 195, 212, 40 O.O.2d 182, 228 N.E.2d 841; *Kniebbe v. Wade* (1954), 161 Ohio St. 294, 297, 53 O.O. 175, 118 N.E.2d 833; *Baldwin v. Bank of Massilon* (1853), 1 Ohio St. 141, 148. As this court long ago recognized in *Churchill v. Little* (1872), 23 Ohio St. 301, 307, an executory contract for the purchase of land "does not convey, or purport to convey, or legally to incumber or affect any estate or interest in land." Further, in *McCombs v. Howard* (1868), 18 Ohio St. 422, 436, quoting 1 Hilliard, The Law of Vendors and Purchasers of Real Property (1858) 9, this court described it as settled that "as a general rule, the purchaser, under a contract for

8

the sale of land, before conveyance, has 'neither a legal nor equitable right, as against the seller, until he pay the purchase money.' " See also *Coggshal v. Marine Bank Co.* (1900), 63 Ohio St. 88, 57 N.E. 1086, paragraphs one and two of the syllabus (explaining that the buyer obtains an equitable estate in land, equal to the amount of the purchase money paid, through the purchase agreement that may ripen into a right to the conveyance of legal title according to the terms of the contract, but the seller retains both legal title and a beneficial estate in the property to the extent of the unpaid purchase money).

**{¶ 22}** Nor does entering into a contract to purchase real property constitute a transfer for taxation purposes. Notably, this court in *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision* (1999), 86 Ohio St.3d 181, 182-183, 712 N.E.2d 751, recognized that the holder of an equitable interest in real property by virtue of a sales contract is not its legal owner and therefore lacks standing to file a real-property-tax-valuation complaint. R.C. 323.41 provides that "[e]ach person *holding lands* shall pay the tax assessed thereon each year * * *" (emphasis added), and R.C. 319.20 directs the county auditor to transfer the property into the buyer's name on the tax list "on application and *presentation of title*." (Emphasis added.)

**{¶ 23}** R.C. 317.22 provides that "[n]o deed of absolute conveyance of land * * * shall be recorded by the county recorder until * * * [t]he conveyance presented to the recorder bears the stamp of the county auditor * * * [and s]uch conveyance has been presented to the county auditor, and by the county auditor indorsed 'transferred' or 'transfer not necessary.' " Before the deed may be endorsed by the auditor, however, R.C. 319.202 requires the new owner to submit a real property conveyance fee statement to the auditor declaring the value of the real property, and pursuant to R.C. 319.20, the auditor must transfer the parcel into the new owner's name on the tax list. The purpose of this statutory scheme is

to provide the auditor the necessary information to determine the true value of property based on a property sale in accordance with R.C. 5713.03.

{¶ 24} For this reason, in determining the date a sale of property occurs, only for purposes of establishing the true value of property pursuant to R.C. 5713.03, the auditor should use the date that the real property conveyance fee statement is filed in the auditor's office as the sale date of the property.

{¶ 25} Here, the filing of the real property conveyance fee statement for the December 2003 sale on December 30, 2003, occurred in closer proximity to the tax lien date than the filing of the real property conveyance fee statement for the April 2004 sale on April 30, 2004. Therefore, for purposes of establishing the true value of the property in accordance with R.C. 5713.03, the auditor should use the December 2003 sale price as the true value of the property for tax year 2004.

{¶ 26} Bedford's position that the earlier sale does not reflect any property value increase attributed to the long-term U.S. Bank lease is also not well taken. We recognize that the parties to sales factor the value of encumbrances into the selling price of the property. We therefore assume that both Tops Markets and JBK Cuyahoga considered the value of the long-term lease when they agreed to the sale price, as both parties anticipated the subsequent lease of the property to U.S. Bank. There is an expectation that when a willing seller and a willing buyer agree to the selling price of property, they give due consideration to the value of leases that encumber it as well as to its potential rental or income-producing value. See *Rhodes v. Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236, ¶ 3 (declining to adjust the true value of property on the basis of a long-term lease encumbering it when the property had been the subject of an arm's-length sale).

{¶ 27} Moreover, the General Assembly has mandated that the auditor consider the sale price to be the true value of the property for taxation purposes. This section of the Revised Code contains no exception for the auditor to value

property encumbered by a lease any differently from unencumbered property. Rather, the only considerations articulated in R.C. 5713.03 are whether the property has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time either before or after the tax lien date, and we apply those considerations in this case.

{¶ 28} The record here supports the conclusion that an arm's-length sale occurred between a willing seller and a willing buyer in December 2003 and that the higher sale price for the property obtained in April 2004 resulted from the serendipity of HIN's purchase, as HIN contemplated a 1031 exchange and specifically sought a property with a triple net lease. Thus, the facts here are not contrived nor do they suggest any effort by the parties to manipulate the sale to derive a favorable tax result. These are two separate arm's-length transactions, and nothing in the record suggests otherwise.

{¶ 29} Finally, in accordance with *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 32, this court lacks jurisdiction to consider Bedford's assertions that (1) the BTA's decision is internally inconsistent because it valued the 2.3911-acre parcel using the April 2004 sale price of that parcel and (2) for tax year 2005, the April 2004 sale price should be used to assess the true value of the property because Bedford did not preserve these errors for appeal, as it failed to include them specifically in the notice of appeal.

## Conclusion

{¶ 30} When a property is the subject of two arm's-length transactions between a willing seller and a willing buyer within a reasonable time before or after the tax lien date, the sale occurring closer in time to the tax lien date establishes the true value of the property for taxation purposes. In determining which sale occurred in closer proximity in time to the tax lien date, the auditor should use the date the real property conveyance fee statement is filed in the

auditor's office as the sale date of the property. Here, the BTA determined that the December 2003 sale occurred in closer proximity to the tax lien date than the April 2004 sale and therefore established the true value of the property for tax year 2004 as $4,790,000. Because that decision is reasonable and lawful, it is affirmed.

Decision affirmed.

MOYER, C.J., and PFEIFER, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

_____

**LUNDBERG STRATTON, J., concurring.**

**{¶ 31}** While I appreciate that sometimes it is difficult to establish the date of sale under R.C. 5713.03 for considering the true value for taxation purposes, I am concerned that the majority implies that only the conveyance fee date establishes the date of sale for purposes of evaluation by the auditor.

**{¶ 32}** I believe that using the date the conveyance fee statement is filed to establish the date of sale is a useful point in assisting the auditor in determining value. However, such a rule should be a rebuttable presumption and an evidentiary tool only. Language fixing the date of the sale does not appear in the statute. The General Assembly did not establish the date of the conveyance fee as the date of sale, and this court should not add such language to the statute. The parties should be allowed to present evidence at hearings before a board of revision and the Board of Tax Appeals to establish that the true date of sale is a different point from the date of the filing of the conveyance fee.

**{¶ 33}** However, because the majority includes the following language in its syllabus, "[t]he auditor *should use* the date that the real property conveyance fee statement is filed in the auditor's office as the sale date of the property," I believe that this language may be interpreted to permit the parties to submit evidence of a different date of sale to rebut the conveyance date. Thus, I concur.

12

CUPP, J., concurs in the foregoing opinion.

_____

Siegel, Siegel, Johnson & Jennings Co., L.P.A., and Jay P. Siegel, for appellee HIN, L.L.C.

Kolick & Kondzer, Thomas A. Kondzer, John P. Desimone, and Daniel J. Kolick, for appellant.

_____