HIN, L.L.C., APPELLANT, *v.* CUYAHOGA COUNTY BOARD

OF REVISION ET AL., APPELLEES.

[Cite as *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision,*

138 Ohio St.3d 223, 2014-Ohio-523.]

*Taxation—R.C. 5713.03—Arm's-length sale—Sale price is presumed to establish value—Lease encumbrance or appraisal evidence does not invalidate sale price.*

(No. 2012-0725—Submitted August 20, 2013—Decided February 20, 2014.)

APPEAL from the Board of Tax Appeals, No. 2008-K-2386.

_____

**FRENCH, J.**

**{¶ 1}** In this appeal, the owner of an office building contests the Board of Tax Appeals' ("BTA's") decision to adopt the April 2004 sale price of $7.4 million as the property's value for tax-year 2006. Because we have previously addressed and rejected the legal arguments the property owner makes, and because the BTA properly determined the value of the property, we affirm the BTA's decision.

**Facts**

**{¶ 2}** The property at issue is a 34-acre parcel containing a two-story, 78,500-square-foot office building. The property is located in Bedford, Ohio.

**{¶ 3}** Tops Markets, L.L.C. ("Tops"), owned the property in 2003. U.S. Bank contracted to purchase the property from Tops but later assigned its purchasing rights to JBK Properties, Inc. ("JBK"). As of September 8, 2003, the parties had put together a deal for JBK to purchase the property from Tops for $4.9 million and then lease it to U.S. Bank. In fact, JBK's purchase of the property was contingent upon the U.S. Bank lease. JBK and U.S. Bank signed the

triple-net lease[1] on November 1, 2003. Tops signed over the deed to JBK on December 24, 2003, and JBK recorded the deed with the county auditor on December 30, 2003.

**{¶ 4}** In January 2004, appellant, HIN, L.L.C. ("HIN")—a company unaffiliated with Tops, JBK, or U.S. Bank—approached JBK about purchasing the property. HIN was interested in buying a building with a triple-net lease in order to close a 1031 exchange.[2] On April 29, 2004, JBK transferred the property to HIN for $7.4 million. HIN recorded the transfer with the county the next day.

**{¶ 5}** The April 2004 sale was discussed by this court in a previous case. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144 ("*HIN I*"). The issue in *HIN I* concerned the value of the property for tax-year 2004. This court considered the December 2003 sale price of $4.9 million as well as the April 2004 sale price of $7.4 million. We determined that the December 2003 sale price was the value of the property because it was closer in time to the tax-lien date. *Id.* at ¶ 30.

**{¶ 6}** The same parties are back before this court to argue over the property's tax value for 2006. For tax-year 2006, the Cuyahoga County auditor set the value at $8 million. HIN filed a complaint with appellee Cuyahoga County Board of Revision ("BOR") seeking a decrease in value to $5 million, an amount very close to the December 2003 sale price. The BOR held a hearing on

---

1. In a triple-net lease, the tenant agrees to pay utilities, maintenance, real estate taxes, and insurance. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 3, fn. 1, citing Appraisal Institute, *The Appraisal of Real Estate* 477 (12th Ed.2001).

2. A 1031 exchange is a like-kind property exchange made to take advantage of tax benefits in 26 U.S.C. 1031. The exchanges are a method of tax deferment. " 'The concept behind a 1031 exchange is that, when a property owner sells a property and reinvests its proceeds into another property, any economic gain has not been realized in a way that generates funds to pay any tax.' *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 2006-T-1804, at 7 (Jan. 13, 2009). Accordingly, the Internal Revenue Code defers the taxation of any gain from the sale of the property in this situation." *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 7, fn. 2.

HIN's valuation complaint and reduced the property value from $8 million to the 2004 sale price of $7.4 million. HIN appealed to the BTA, seeking a reduction to the December 2003 sale price of $4.9 million.

{¶ 7} The BTA held a hearing at which HIN offered the testimony of two experts, appraiser Roger Ritley and real estate investor and attorney Robert Weiler. Both men attempted to distinguish the "leased fee," which Weiler defined as "ownership of real estate that's encumbered with a lease," from the "fee simple," which Weiler defined as "ownership of real estate unencumbered." Both also opined that a lease, such as the one between JBK and U.S. Bank, was an intangible asset that could not be considered when determining the fee-simple taxable value of the real property.

{¶ 8} In his appraisal report, Ritley concluded that the $2.5 million increase in price from 2003 to 2004 was due exclusively to the U.S. Bank lease, which he described as "an intangible property component" of the 2004 sale. In his view, the $7.4 million sale represented the sale of the leased fee, while the prior $4.9 million sale represented the sale of the fee simple. Ritley appraised the property at $5.1 million for tax-year 2006, recognizing just a slight appreciation from the December 2003 sale price.

{¶ 9} Appellee Bedford City School District Board of Education did not introduce any appraisal evidence. It submitted only the deed and conveyance statement showing the details of the April 2004 sale for $7.4 million.

{¶ 10} Relying on recent case law from this court, the BTA rejected HIN's contention that the $7.4 million sale price did not reflect the taxable value of the property because of the long-term lease encumbrance. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2008-K-2386, 2012 WL 1257409, *3 (Mar. 27, 2012). The BTA also held that because the April 2004 sale was a recent arm's-length transaction, it would be "inappropriate to consider the alternative

evidence of value offered by appellant," such as Ritley's appraisal. *Id*. at *5. The BTA therefore upheld the $7.4 million sale price as the best evidence of value.

{¶ 11} In this appeal, HIN requests that we reverse the BTA. HIN argues that the $7.4 million sale price does not represent the taxable value of the property, because the property was sold with a lease encumbrance. HIN further argues that the BTA erred in not considering HIN's independent appraisal as alternative evidence of value. For the reasons that follow, we affirm the BTA.

## Analysis

### *A Recent Arm's-Length Sale Price Establishes the Value of the Property*

{¶ 12} Our analysis begins with former R.C. 5713.03, Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722, which was in effect for tax-year 2006.[3] Former R.C. 5713.03 provides:

> In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes.

Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, at 2722. This provision mandates that a recent arm's-length sale price be used as the criterion for a property's value. *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d

_____

3. At oral argument, counsel for HIN took the position that the amended version of R.C. 5713.03, effective in 2012, should apply to this case. We reject this suggestion. Instead, we apply the substantive tax law that was in effect for the relevant valuation year. *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 20, fn. 1. The 2012 amendments to R.C. 5713.03 do not apply to a determination of value for tax-year 2006. Accordingly, we apply the former version of R.C. 5713.03 here.

516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, citing *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13.

{¶ 13} HIN does not dispute that the April 2004 sale was recent and at arm's length. Instead, HIN contends that there are "factors other than a sale's arm's length nature and recency which can render a sale unrepresentative of value." The factors that HIN identifies here are (1) the existence of the long-term lease and (2) HIN's appraisal.

{¶ 14} HIN is mistaken. A sale price is presumed to establish the value of real property. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997). The *only* way a party can show that a sale price is not representative of value is to show that the sale was either not recent or not an arm's-length transaction. *Cummins* at ¶ 13 ("a sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency and arm's-length character * * * are genuinely present"); *HIN I*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, at ¶ 27 ("the only considerations articulated in R.C. 5713.03 are whether the property has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time").

{¶ 15} The cases HIN relies upon do not support its position. In *Cincinnati School Dist. Bd. of Edn.,* we did not recognize any additional factors—beyond recency and arm's-length character—that could render a sale price not representative of value. Indeed, in that case, the only relevant factor was whether the sale at issue was an arm's-length transaction. *Id.* at 327-328. *Pingue v. Franklin Cty. Bd. of Revision,* 87 Ohio St.3d 62, 717 N.E.2d 293 (1999), is similarly unhelpful to HIN. To the extent that *Pingue* supports HIN's position, *Pingue* relied on *Ratner v. Stark Cty. Bd. of Revision*, 23 Ohio St.3d 59, 491

N.E.2d 680 (1986), which was later overruled in *Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, at ¶ 13.

{¶ 16} HIN also cites *Higbee Co. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385, as a case in which "the Court rejected the use of a recent sale price." HIN cites one sentence from our opinion, which stated that although Higbee had "purchased the land for $10, neither of Higbee's appraisers valued the land at $10," *id*. at ¶ 45, and thus argues that we ignored the sale price of the property in favor of the appraisal evidence. We disagree with this characterization. Higbee had purchased undeveloped land and then constructed a department store. We attempted to determine whether the BTA properly valued the developed parcel, which had never been sold, by looking to competing appraisals. The purchase price of the undeveloped land was not pertinent. Our decision simply did not involve the issue whether the sale price ought to be regarded as the property's value. Accordingly, HIN's citation of *Higbee* is unavailing.

{¶ 17} Next, HIN cites *Berea*, in which we stated that " '[a]ppraisals based upon factors other than sale price are appropriate for use in determining value only when no arm's-length sale has taken place, *or where it is shown that the sale price is not reflective of the true value*.' " (Emphasis deleted and added; citation omitted.) *Berea* at ¶ 15, quoting *Columbus Bd. of Edn. v. Fountain Square Assocs., Ltd.*, 9 Ohio St.3d 218, 219, 459 N.E.2d 894 (1984). Again, this quotation does not support HIN's attempt to look beyond the arm's-length character or recency of a sale. In *Berea*, we held that outside appraisals would be appropriate only when (1) there was *no sale at all*, *id*., or (2) there was a sale, but it was not indicative of value, either because it was not recent or not at arm's length, *id*. at ¶ 14. *Berea* does not hold that a recent arm's-length sale could somehow not reflect true value. In fact, it explicitly holds that a recent arm's-

length sale price is always reflective of tax value, regardless of what competing appraisals might say. *Id.* at ¶ 13-16.

{¶ 18} Accordingly, the only way HIN could show that the 2004 sale price was not indicative of value would be to challenge the recency or arm's-length character of the sale; HIN challenged neither. Therefore, the 2004 sale price established the value of the property. The extraneous factors HIN cites—the U.S. Bank lease and the Ritley appraisal—are irrelevant.

### *Neither the Lease Encumbrance Nor the Appraisal Evidence Invalidates the Sale Price*

{¶ 19} Nevertheless, HIN attempts to make the lease relevant by arguing that because the property was sold with the lease attached, and because leases are not taxable, the sale price does not reflect the true value of the property for tax purposes. HIN claims that the 2004 sale represents the value of the leased fee, not the unencumbered fee simple. It argues that we must value property in its unencumbered state.

{¶ 20} We have rejected this argument numerous times. In *Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, we faced the question of how to value a property subject to two long-term leases. The property had recently been sold in an arm's-length transaction. The board of education argued that the BTA should have disregarded the sale price and valued the property as if unencumbered with the leases. The board also presented appraisal evidence of what that unencumbered value would be. We rejected the board's arguments and held that when there has been a recent arm's-length sale, the taxing authority must disregard appraisal evidence and accept the sale price as the true tax value of the property, regardless of any lease encumbrances. Thus, despite HIN's contentions, a recent arm's-length sale price establishes the value of real property for tax purposes even if that property is encumbered by a long-term lease. *See also AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d

563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 17 ("we reject the contention that the existence of a long-term lease resulting from a sale-leaseback makes the subsequent sale price not indicative of true value"); *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 18 ("the arm's-length sale price of a legal fee interest should *not* be adjusted on account of the mere existence of an encumbrance" [emphasis sic]); *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 45, 2008-Ohio-1588, 885 N.E.2d 934, ¶ 12 (same); *Rhodes v. Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236, ¶ 3 (holding that a sale price established the tax value of property, even though the property was encumbered by a long-term lease).

{¶ 21} Not only have we affirmed this rule numerous times, we also have affirmed it in regard to this exact piece of property. *HIN I*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, at ¶ 27. In *HIN I*, we told the parties that former R.C. 5713.03 "contains no exception for the auditor to value property encumbered by a lease any differently from unencumbered property." *Id.* at ¶ 27. That principle was true then and it remains true now: the U.S. Bank lease does not affect our duty to accept the recent arm's-length sale price as the true value of the property.

{¶ 22} HIN attempts to refute this precedent by citing general appraisal principles. The appraisal profession defines "fee simple" as "[a]bsolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." Appraisal Institute, *The Appraisal of Real Estate* 114 (13th Ed.2008). By contrast, when a property is encumbered by a lease, appraisers define the property as a "leased fee." *Id.* At the BTA hearing, HIN's witnesses testified to these terms and distinctions.

**{¶ 23}** But we have already pointed out that these definitions, though no doubt useful for how appraisers understand their assignments, simply do not define the subjects of taxation under Ohio law:

> The distinction between "fee simple" and "leased fee" is one drawn in the context of appraisal practice. The appraisal industry uses the term "fee simple" to refer to unencumbered property—or to property appraised as if it were unencumbered. This distinction is not one recognized by the law, however. A "fee simple" may be absolute, conditional, or subject to defeasance, but the mere existence of encumbrances does not affect its status as fee simple.

(Citations omitted.) *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 23, fn. 4. Accordingly, the appraisal-profession standards espoused by HIN's experts do not alter our legal analysis.

**{¶ 24}** Additionally, HIN relies on *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 523 N.E.2d 826 (1988), in support of its position that we must value the property as if unencumbered by the U.S. Bank lease. In *Alliance Towers*, we stated that "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." *Id.* at paragraph one of the syllabus. In *Cummins*, however, we distinguished *Alliance Towers* because it involved a valuation by appraisal, not the validity of a sale price. *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 15. We found *Alliance Towers* to be inapposite and affirmed that it would never be proper to adjust a recent arm's-length sale price because of an encumbrance. *Id.* at ¶ 25-26.

**{¶ 25}** Finally, even if the lease encumbrance were legally relevant, it would not be factually relevant in this case. HIN claims that the lease inflated the 2004 sale price and that the $2.5 million increase in price between 2003 and 2004 was due exclusively to the lease. We rejected this argument in *HIN I*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, at ¶ 26, and we reject it again here. The lease was not a new condition that sprang up after the 2003 sale. The lease existed prior to, and was a condition of, the 2003 sale. It was contemplated, negotiated, and signed before the 2003 sale, and the parties had already factored the lease into the $4.9 million transaction. As we wrote in *HIN I*:

> [The] position that the [December 2003] sale does not reflect any property value increase attributed to the long-term U.S. Bank lease is also not well taken. We recognize that the parties to sales factor the value of encumbrances into the selling price of the property. We therefore assume that both Tops Markets and JBK Cuyahoga considered the value of the long-term lease when they agreed to the [$4.9 million] sale price, as both parties anticipated the subsequent lease of the property to U.S. Bank.

*Id.* at ¶ 26. We went on to explain that the price increase actually resulted "from the serendipity of HIN's purchase, as HIN contemplated a 1031 exchange and specifically sought a property with a triple-net lease." *Id.* at ¶ 28. Thus, HIN cannot argue that the price increase was due to the lease or that the $4.9 million price represents a separate, unencumbered valuation.

**{¶ 26}** HIN's appraisal evidence is similarly not relevant to our determination of value. Appraisal evidence cannot be used to rebut a recent arm's-length sale price. "At the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price

has been offered as evidence of value." *Dublin City*, 118 Ohio St.3d 45, 2008-Ohio-1588, 885 N.E.2d 934, at ¶ 8; *see also AEI Net Lease*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, at ¶ 22, fn.1 ("appraisal evidence may not be considered in valuing property when there is a recent, arm's-length sale price"). We therefore reject HIN's contention that the BTA was required to consider Ritley's appraisal in valuing the property.

**{¶ 27}** HIN did not dispute either the arm's-length character or the recency of the April 2004 sale. These were the only measures that mattered. Both the lease encumbrance and the appraisal evidence were irrelevant. Therefore, we must accept the $7.4 million sale price as the conclusive value of the property for tax purposes.

### *Using the Sale Price to Value the Property Does Not Violate the Constitutional Requirement of Taxation by Uniform Rule*

**{¶ 28}** Finally, HIN argues that using the 2004 sale price amounts to a nonuniform assessment in violation of the Ohio Constitution, Article XII, Section 2. This constitutional provision provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." Again, this assertion is one that we have addressed and rejected. *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 25. We stated in *Cummins* that "the uniform rule is that property should be valued in accordance with an actual sale price where the criteria of the recency and arm's-length character of the sale are satisfied." *Id*.; s*ee also Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 21. Our pronouncement in *Cummins* completely disposes of HIN's uniformity argument in this case.

### Conclusion

**{¶ 29}** For the foregoing reasons, we find that the BTA's decision to adopt the $7.4 million sale price from April 2004 as the property's value for tax-

year 2006 was not unreasonable or unlawful. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 30} I continue to believe that "[b]lind reliance on purchase price to determine fair market value of real estate is simplistic and naïve." *Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision*, 67 Ohio St.3d 575, 578, 621 N.E.2d 693 (1993) (Pfeifer, J., dissenting). Unfortunately, a majority of this court continues to adhere to the unnecessarily rigid standard that forms the basis of its opinion in this case. Fortunately, based on recent changes to the statutory scheme, entities involved in the valuation of real estate for taxation purposes, including this court, will be required to adopt a more nuanced approach. As of 2012, R.C. 5713.03 requires county auditors to determine the "true value of the fee simple estate, as if unencumbered" and allows, but does not require, county auditors to consider a recent arm's-length transaction as the true value for taxation purposes. 2012 Am.Sub.H.B. No. 487. These changes are welcome because they more accurately reflect reality than the court's current interpretation of the statutory scheme.

{¶ 31} Our court is not required to adhere to the rigid standard that we unnecessarily adopted and have slavishly followed. The statutory scheme that governs this case is not as rigid as this court's approach has been, as I explained in my dissent in *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782. It is possible to allow evidence of facts and circumstances that affect true value, including the

effect of encumbrances and the impact of a 1031 exchange.  I would allow HIN to present evidence of the true value of its real estate.  I dissent.

_____

Siegel Jennings Co., L.P.A., J. Kieran Jennings, and Jason P. Lindholm, for appellant.

Kolick & Kondzer, Thomas A. Kondzer, and John P. Desimone, for appellee Bedford Board of Education.

_____