Pfeifer, J.,
concurring in part and dissenting in part.
{¶ 85} The federal court certified two questions to this court. I dissent from the majority’s response to the first question; I would hold that the recorded lease of a subsurface mineral estate is not a title transaction under R.C. 5301.56(B)(3)(a). An answer to the second question becomes necessary only because of the majority’s response to the first question. Still, I concur in the majority’s response to the second question, wherein this court holds that the expiration of a recorded lease and the reversion of rights under that lease do not *510 constitute a title transaction that restarts the 20-year forfeiture clock under R.C. 5301.56(B)(3)(a). But back to that first question.
{¶ 86} We are asked whether the execution of a lease is one of the six saving events under R.C. 5301.56(B)(3), specifically, whether the recording of a lease constitutes a “title transaction” under R.C. 5301.56(B)(3)(a). Under that provision, the 20-year dormancy clock under Ohio’s Dormant Mineral Act (“ODMA”) restarts when, within the past 20 years, “[t]he mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.” R.C. 5301.47(F) defines what a title transaction is:
“Title transaction” means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee’s, assignee’s, guardian’s, executor’s, administrator’s, or sheriffs deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage.
The ultimate question regarding the saving event under R.C. 5301.56(B)(3)(a), then, is whether the mineral interest has been the subject of any transaction affecting its title.
{¶ 87} The starting point for analyzing whether the recording of a lease is a title transaction under the ODMA is the plain language of the statute defining “title transaction.” That definition names certain types of title transactions but does not include leases. Nor does the definition of title transaction include anything like leases. Granted, R.C. 5301.47(F) does not state that its list of transactions that affect title is exhaustive, but every transaction mentioned in the statute either actually or potentially affects an ownership interest in the property. Almost all of the listed transactions in the statute specifically relate to a transfer of title by a deed or similar vehicle, and thus, a transfer of ownership. The statute also mentions a transaction by “decree of court,” e.g., by a quiet-title action that determines who holds title to the property. A mortgage, also listed in the statute, does not affect the present ownership of the property, but creates in the mortgage holder, upon the default of the borrower, the ability to exercise rights of ownership. Since all of the examples listed in R.C. 5301.47(F) bear on the ownership of property, it follows that a transaction like a lease, which does not alter who owns the property at issue, falls outside the scope of the statute.
{¶ 88} The lack of a reference to leases is significant given the legislative history of the ODMA. When it was first introduced as legislation in Ohio, the ODMA specifically included a lease of property as a saving event. Under the proposed version of R.C. 5301.56(B)(2)(a), a mineral right would not be consid *511 ered dormant if, in the preceding 20 years “the interest has been conveyed, leased, transferred, or mortgaged by an instrument filed or recorded in the recorder’s office of the county in which the lands are located.” S.B. No. 223, as introduced in the 117th General Assembly. This was consistent with the Uniform Dormant Mineral Interests Act (“UDMIA”), which the National Conference of Commissioners on Uniform State Laws approved and recommended in August 1986. Under Section 4(b)(3) of the UDMIA, one of the listed saving events was “[rjecordation of an instrument that creates, reserves, or otherwise evidences a claim to or the continued existence of the mineral interest, including an instrument that transfers, leases, or divides the interest.” But that clear declaration in the UDMIA and in the introduced version of the ODMA is absent from the ODMA that was ultimately enacted into law.
{¶ 89} The question whether a lease is a title transaction was a known issue without a uniform answer among the states at the time the ODMA was being considered. The Prefatory Note of the UDMIA states, “A lease permits the lessee to enter the land and remove minerals for a specified period of time; whether a lease creates a separate title to the real estate varies from state to state.” As the majority relates, “[t]he oil and gas lease is central to the oil and gas industry,” majority opinion at ¶ 16, and “whether an oil and gas lease would meet the definition of a title transaction” was “[a] question, at least in the minds of the land-title insurance industry” at the time of the enactment of the ODMA in 1989, majority opinion at ¶ 28. The General Assembly answered the question: leases, the central documents of the oil and gas industry, are not mentioned as saving events. If the General Assembly intended to include leases, why would it delete the language from the original bill that expressly included leases? And why would it bypass the inclusion of leases recommended in the UDMIA, of which it surely was aware? If the General Assembly intended leases to operate as saving events, why wouldn’t it simply say so? Other states have. Michigan explicitly includes a lease as a saving event. Mich.Comp.Laws Ann. 554.291(1) (“Any interest in oil or gas in any land owned by any person other than the owner of the surface, which has not been sold, leased, mortgaged, or transferred * * * for a period of 20 years shall * * * be deemed abandoned * * * ”). Oklahoma explicitly includes a lease as a title transaction. 16 Okla.Stat.Ann. 78(f) (“ ‘Title transaction’ means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, mineral deed, lease or reservation ;fc :}c
{¶ 90} This is not to say that leases have no role in the ODMA. A saving event occurs when “[tjhere has been actual production or withdrawal of minerals by the holder * * * from lands covered by a lease to which the mineral interest is subject * * *.” Simply put, a lease plays a part in a saving event when production begins pursuant to the lease’s terms, but not while the minerals to *512 which it is attached remain unexploited. This is consistent with the aim of the ODMA to encourage the use of Ohio’s natural resources.
{¶ 91} Since the briefing and oral argument in this case, the General Assembly has amended R.C. 5301.09. That statute requires the recording of leases and licenses “by which any right is granted to operate or to sink or drill wells thereon for natural gas and petroleum or either.” Effective March 23, 2015, the General Assembly amended the statute by adding the introductory phrase, “[i]n recognition that such leases and licenses create an interest in real estate.” But the fact that they are interests in real estate does not mean that leases and licenses affect the title to a mineral interest. The ownership of the mineral interest remains with the lessor. The lessor retains the power to convey the mineral interest, subject to the lease. “[A]n oil lease is an encumbrance.” Karas v. Brogan, 55 Ohio St.2d 128, 129, 378 N.E.2d 470 (1978). An encumbrance does not affect the title of property held in fee simple. “ ‘A “fee simple” may be absolute, conditional, or subject to defeasance, but the mere existence of encumbrances does not affect its status as fee simple.’ ” HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 23, quoting Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 23, fn. 4. The presence of a lease may affect the value of the property or may affect the owner’s use of the property, but it does not affect the owner’s title to the property.
{¶ 92} The question presented in this case is whether the recordation of a lease is a saving event under R.C. 5301.56(B)(3)(a). We are interpreting a statute. We know that the recording of a lease is not specifically mentioned as a saving event. We know that the recording of a lease is not specifically mentioned as a title transaction. We know that a lease is unlike the transactions that are mentioned in the definition of a title transaction. We know that leases are saving events in the model statute and were also in the ODMA as first introduced, but they were not in the ODMA as enacted. We know that where leases are mentioned in the ODMA, production pursuant to the lease is required to constitute a saving event. Knowing all this, I cannot conclude that the recording of a lease is a saving event under R.C. 5301.56(B)(3)(a).
O’Donnell, J., concurs in the foregoing opinion.