[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7578.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7578

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7578.]**

*Taxation—Real-property valuation—Sale price in sale/leaseback transaction was not indicative of property value—Decision of the Board of Tax Appeals reversed.*

(No. 2015-2105—Submitted May 3, 2017—Decided September 14, 2017.)

APPEAL from the Board of Tax Appeals, No. 2014-3918.

_____

O'DONNELL, J.

{¶ 1} State Farm Mutual Automobile Insurance Company ("State Farm") appeals from a decision of the Board of Tax Appeals ("BTA") that increased the tax value of its property.  Although the BTA adopted the $14,000,000 value

determined by State Farm's appraiser for tax year 2011, it relied on a November 2013 sale price and ordered an increase to $25,092,330 for tax year 2012. The BTA used the 2013 sale price even though that price was part of a sale/leaseback transaction. On appeal, State Farm argues that the sale price was not indicative of value because it was not at arm's length for purposes of determining property value. We agree and reverse the decision of the BTA.[1]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**{¶ 2}** Tax year 2011 was a sexennial reappraisal year in Franklin County, and the auditor determined the value of the office building at issue to be $18,540,000. At that time, State Farm both owned the building and used it as an operations center. It filed a complaint seeking a reduction to $14,000,000. Before the Franklin County Board of Revision ("BOR"), it supported its request with the formal opinion of its appraiser, Bruce E. Pickering, a member of the Appraisal Institute, who opined a value of $14,000,000 for tax year 2011 and a value of $14,500,000 for tax year 2012. The Columbus City Schools Board of Education ("BOE") cross-examined Pickering and asserted that the value should be determined in accordance with two subsequent sales, one that occurred on November 19, 2013, for $25,092,326, and a second one that occurred on April 7, 2014, for $26,100,000.

**{¶ 3}** In addition to testifying in support of a reduced value, Pickering testified concerning the subsequent sales of the property. He stated that he had reviewed the two sales of the subject property "in detail," found that the seller and

---

[1] State Farm's second proposition of law argues that, under R.C. 5713.03 as amended by 2012 Am.Sub.H.B. No. 487, the sale price may not be used because it is affected by the encumbering lease. Because the tax year at issue is 2012, we reject this argument summarily based on our recent holding in *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-4415, ___ N.E.3d ___. In *Terraza 8*, we held that the version of R.C. 5713.03 in effect as of the tax lien date should be applied to that year's tax assessment. *Id*. at ¶ 18. Because H.B. 487 was not effect on January 1, 2012, it should not be applied to the tax-year 2012 assessment. Accordingly, the unamended version of R.C. 5713.03 must be applied here, and we will therefore not address arguments raised by State Farm under the amended version of the statute.

buyer were not typically motivated market participants, and opined that neither sale was "indicative of the fee simple value" of the property. He characterized the sales as involving a "sale/leaseback" in which the buyer (in the first sale) relied on "the State Farm credit behind the lease." The second sale did not indicate value because "it was based on the sale/leaseback lease."

{¶ 4} The BOR found that the 2013 sale was not at arm's length, given that it was a sale/leaseback. It did not specifically consider the 2014 sale. The BOR adopted Pickering's appraisal value of $14,000,000 for 2011 and 2012.

{¶ 5} The BOE appealed to the BTA, where it relied on the conveyance-fee statements to advocate for use of the later sale prices. State Farm countered by presenting two lay witnesses concerning the subsequent sale in November 2013, as well as numerous related exhibits. Philip J. Reuter, a State Farm investment officer who was involved with negotiating the sale of this and several other properties in 2013, testified that State Farm bundled the property at issue for sale with other locations at which the company would conduct business, after sale, as a tenant. Reuter explained that State Farm's high credit rating made the income stream of rent from such properties "very valuable" to potential real estate investors. He testified from his experience of transactions in which State Farm purchased real property that "if a building is leased to an investment-grade credit tenant you're going to buy that, and it impacts the price that you're going to [be motivated to] pay for that particular asset." Additionally, Reuter testified that the leases were put in place prior to the sale, but with a view to making the sale.

{¶ 6} Raymond P. Templet Jr. also testified for State Farm. Templet was a senior vice president of Hudson Americas, an entity associated with the purchaser in the November 2013 sale/leaseback. Templet confirmed that his employer acquired a portfolio of 23 properties from State Farm in November 2013 and that the sale involved an "absolute net lease" arrangement. Making the property ownership "hands off" for the landlord was "incredibly valuable" to the buyer. The

characteristics of the underlying properties mattered little to the buyer's evaluation of the deal; "the majority of the diligence and focus and analysis that we did * * * was on State Farm's credit, the actual terms of the leases."

**{¶ 7}** State Farm also called its appraiser, Pickering, who discussed the basis for his appraisal and reiterated his reasons for not regarding the subsequent sales to be probative of the property's market value.

**{¶ 8}** In its decision, the BTA considered the recency of the two sales and held that the 2014 sale was not recent, but that the November 2013 sale was recent given the 2012 tax-lien date. BTA No. 2014-3918, 2015 WL 10936019 (Dec. 3, 2015), *3.

**{¶ 9}** Most importantly for the resolution of this appeal, the BTA rejected State Farm's arguments that the 2013 sale price was not at arm's length. *Id*. at *4. Citing the longstanding presumption that the " 'best evidence of "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction,' " *id*. at *2, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus, the BTA found that "none of the testimony indicated that either party to the transaction was compelled or under duress to sell or to purchase the subject property or that the parties to [the] transaction were related or failed to act in their own self-interest." *Id*. at *3. The board also rejected State Farm's contention that because the sale was part of a larger sale/leaseback agreement, the sale price could not be regarded as being at arm's length as a matter of law. *Id*. at *4.

**{¶ 10}** Finally, it overruled State Farm's position that the property should be valued as if unencumbered, stating that " ' "the arm's-length sale price of a legal fee interest should not be adjusted on account of the mere existence of an encumbrance." ' " *Id.*, quoting *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 20, quoting *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-

1473, 885 N.E.2d 222, ¶ 18. Additionally, the BTA considered whether the statutory amendment enacted during 2012 would change the analysis and held that "the changes made to R.C. 5713.03 directing the auditor's valuation process do not overrule the directive consistently set forth by the Supreme Court that this board rely on a recent arm's-length sale of the property if evidence of such a sale is properly before [the board]." *Id*. at *5.

{¶ 11} Accordingly, the BTA retained the appraisal value of $14,000,000 for 2011 but ordered an increase for 2012 to $25,092,330 to reflect the November 2013 sale price. State Farm appealed the increase to this court.

### ARGUMENTS OF THE PARTIES

{¶ 12} State Farm contends that the November 2013 sale price was not the result of an arm's-length transaction, advancing both a legal principle applicable to sale/leasebacks generally and, alternatively, a narrower factual argument based on the evidence presented in this case.

{¶ 13} First, State Farm argues that the sale price from the sale/leaseback cannot, as a matter of law, invoke the presumption that the sale constitutes an arm's-length transaction, because the sale was part of a larger sale/leaseback transaction. State Farm asserts that the presumption is defeated by the parties' relationship to each other due to the sale/leaseback transaction. *See Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 30, fn. 4 (the presence of both a sale and a leaseback as common "elements" of the same overall contract "may deprive both of those elements of their arm's-length character, because the existence of the one element makes the otherwise unrelated parties related with respect to the other element").

{¶ 14} Second, State Farm argues that regardless of the nature of the legal presumption, the evidence here demonstrated that the motivations of and relations between the parties were atypical of participants in the real-estate market generally. The parties adjusted the rent amounts and the sale price to their mutual benefit and

implemented an absolute net lease under which the landlord's involvement consisted solely of receiving the income stream from the lease.

{¶ 15} The BOE advocates the application of the ordinary rule that proof of the sale invokes a presumption of its arm's-length character, which thereby imposes a burden to rebut on the party contesting the use of the sale. According to the BOE, the evidence shows that the parties were acting in their respective self-interests, both attempting to maximize the value of the property in relation to their differing objectives, and nothing in the record shows that the sale price and rent are not reflective of the general market.

{¶ 16} The BOE further argues that the "relatedness" of the parties in a sale/leaseback does not defeat the presumption of an arm's-length transaction unless the record demonstrates collusion between the parties to lower property taxes by negotiating a below-market sale price in consideration of below-market rent. The BOE suggests that the record here shows that the parties each sought to maximize the sale price and the lease payments.

{¶ 17} Additionally, the BOE relies on case law addressing a *subsequent* sale after a sale/leaseback transaction to argue that the evidence presented by State Farm does not rebut the presumptive validity of using the sale price to value the property. That is so, it contends, because the case law has treated the encumbering of property as the owner's method of realizing the property's value.

### STANDARD OF REVIEW

{¶ 18} We apply a de novo standard of review for legal issues in these appeals. *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.*, ___ Ohio St.3d ___, 2016-Ohio-7582, ___ N.E.3d ___, ¶ 8.

### SALE PRICE FROM A SALE/LEASEBACK

{¶ 19} Pursuant to R.C. 5713.01, the "true value in money" is the basis for assessing real property and usually equates to "market value," meaning what the property would sell for when the buyer and seller arrive at the sale price acting as

"typically motivated market participants." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-2734, ___ N.E.3d ___, ¶ 14. The question here is whether the sale price from a sale/leaseback satisfies the "market value" criterion. It does not.

{¶ 20} A sale/leaseback inherently involves an overall contractual relationship between the parties that differs from the model of an unrelated seller negotiating with an unrelated buyer. As we observed in *Cummins*, the contemporaneous negotiation of the sale price and the lease terms, especially the rent payments, sets up a reciprocal relationship between these elements of the overall transaction. *See Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 30, fn. 4 This reciprocal interaction is in itself atypical of the kind of seller-to-buyer transaction that is understood to fix market value for tax purposes, and because of that atypicality, the ordinary presumption in favor of using the sale price under *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, does not apply.

{¶ 21} We are unpersuaded by the BOE's assertion that the sole concern with relying on a sale price from a sale/leaseback lies in possible collusion to set a low sale price for property-tax purposes. Although we alluded to that concern in *Cummins*, *id.* at ¶ 30-31, our discussion does not support this view.

{¶ 22} Moreover, case law demonstrates a broader range of reasons why the sale price from a sale/leaseback does not indicate market value. In *Kroger Co. v. Hamilton Cty. Bd. of Revision*, 67 Ohio St.3d 145, 616 N.E.2d 877 (1993), we affirmed the BTA's rejection of a sale/leaseback based on the board's finding that the transaction involved " 'a borrowing of money subject to full repayment * * * even though [the transaction was] documented in the form of a sale and leaseback transaction.' " *Id.* at 147, quoting *Kroger Co. v. Hamilton Cty. Bd. of Revision*, BTA No. 88-E-872, 1992 Ohio Tax LEXIS 640, *7 (June 12, 1992). *See also Cleveland Hts./Univ. Hts. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 72 Ohio

St.3d 189, 191, 648 N.E.2d 811 (1995) (same).   Furthermore, in *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 314, 317-318, 658 N.E.2d 750 (1996), we affirmed the BTA's rejection of the sale price from a sale/leaseback when appraisal evidence showed that the sale price was tailored to an amount of rent that was below market.  Indeed, in *S. Euclid* we explicitly recognized that a below-market sale price may result from a sale/leaseback for economic reasons other than mere collusion to lower taxes.  *Id.*

{¶ 23} Also pertinent is the propriety of considering appraisal evidence when evaluating the relationship between a sale/leaseback and the market.  In *S. Euclid*, we affirmed a BTA decision that explicitly relied upon the market data contained in an appraisal report to determine that because the rent in the sale/leaseback was below market, the sale price from that transaction was not a reliable indicator of market value.  Yet under the *Berea* standard, the presumption in favor of using the sale price would have displaced the valuation data of the proffered appraisal.

{¶ 24} In *Cummins* we noted that "[a]t the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value." 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13.  Accordingly, when *Berea* applies, relying on an appraisal to value the property "places the cart (appraisal) before the horse (an actual arm's-length sale)."  *Cummins* at ¶ 23.  By contrast, as *S. Euclid* demonstrates, in the context of a sale/leaseback, the opposite is true: the value data contained in an appraisal report become the "horse" that must draw the "cart," which in this context refers to the viability of regarding the sale price as the property value.

{¶ 25} The BOE argues that the post-*Berea* case law addressing *a sale after a sale/leaseback* supports its position.  *See AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830;

*HIN, L.L.C.*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637.  In essence the BOE argues that because the encumbrance of the property, i.e., the lease emanating from the sale/leaseback, posed no obstacle to applying the *Berea* rule to the subsequent sale, the *Berea* rule should typically be applied to the sale/leaseback itself.

**{¶ 26}** The cases cited by the BOE do establish that the sale price from the sale after the sale/leaseback transaction invokes the *Berea* rule, with the result that the price presumptively constitutes the value of the property.  And in those cases, the leading issue was whether the lease emanating from the sale/leaseback deprived the subsequent sale of its arm's-length character; we held that it did not.  *AEI* at ¶ 18, 25-26; *HIN* at ¶ 20, 25.  *See also CCleveland OH Realty I, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 121 Ohio St.3d 253, 2009-Ohio-757, 903 N.E.2d 622 (rejecting argument on authority of *AEI*).  But contrary to the BOE's contention, our decision in *AEI* cites footnote 4 from the *Cummins* case in support of the distinction between the application of *Berea* to a sale/leaseback on the one hand and the application of *Berea* to a subsequent sale on the other.  *AEI*, ¶ 24.

**{¶ 27}** Nor are we persuaded that our discussion in *AEI* of the sale/leaseback transaction before the sale establishes a benchmark for deciding this case.  Although we did acknowledge in *AEI* that the sale/leaseback was itself, viewed in its totality, at arm's length, *see AEI*, at ¶ 21, that does not mean that the sale price from that earlier transaction could have qualified as an arm's-length sale price that established the property value.  The purpose of our discussion of the sale/leaseback in *AEI* was limited to rejecting the argument that the objectives of that earlier transaction should call into question the arm's-length character *of the subsequent sale*.  *AEI* at ¶ 18-20.  We expressed our view that the arm's-length character of the subsequent sale would be negated only if the previous sale/leaseback was collusive, i.e., designed to lower property taxes.  Because the record clearly negated the presence of such motives, we rejected the property

owner's argument and held that the subsequent sale price indicated the property value.

**{¶ 28}** For these reasons, we conclude that the sale aspect of a sale/leaseback does not qualify as an arm's-length transaction under R.C. 5713.03.

### THE RECORD SUPPORTS THE BOR'S CARRYOVER OF THE 2011 VALUE TO 2012

**{¶ 29}** Because our holding means that no presumption arose in favor of relying on the sale/leaseback as determining the property value, the other evidence in the record must be reviewed to determine the 2012 value of the property. Most significant is the opinion of Pickering, State Farm's appraiser. The BOR apparently consulted Pickering's opinion that the property value for 2012 was $14,500,000, but then decided to exercise its authority under R.C. 5715.19(D) to carry forward the $14,000,000 value from 2011. Neither before the BTA nor before the court has the BOE asked, as an alternative to its sale-price argument, that the appraiser's higher value for 2012 be adopted in place of the carryover value. *See Oak View Properties, L.L.C. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 478, 2016-Ohio-786, 58 N.E.3d 1133, ¶ 9 (not error for BTA to retain the BOR's reduced value when the board of education had not advanced its argument for setting aside the reduction), citing *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 549, 2015-Ohio-4837, 45 N.E.3d 968, ¶ 15; *see also E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3 (when party "never pressed this argument in its briefs," the argument was " 'deemed to be abandoned' "), quoting *Household Fin. Corp. v. Porterfield*, 24 Ohio St.2d 39, 46, 263 N.E.2d 243 (1970).

**{¶ 30}** Accordingly, we reverse the decision of the BTA and order that the BOR's value of $14,000,000 be reinstated for tax year 2012.

### THE BOE DID NOT CROSS-APPEAL THE RECENCY ISSUE

**{¶ 31}** In its brief, the BOE states that "[if] the Court determines that the November 2013 sale was not an arm's length transaction, the Court must rely upon

the April 2014 purchase price of $26,100,000 to determine the value of the property for tax year 2012." The BTA found that the 2014 sale was not recent, and because the BOE failed to challenge that finding through a protective cross-appeal to this court, we lack jurisdiction to grant relief from the BTA's disposition of the 2014 sale.

{¶ 32} That is so because the case law establishes that when the BTA has made an actual finding adverse to a party, "it [is] imperative that that finding be affirmatively challenged as error" through a cross appeal in order to preserve jurisdiction over the issue. *Internatl. Paper Co. v. Testa*, ___ Ohio St.3d ___, 2016-Ohio-7454, ___ N.E.3d ___, ¶ 31, citing *Rowland v. Collins*, 48 Ohio St.2d 311, 312, 358 N.E.2d 582 (1976); *see also Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 33 (no jurisdiction to correct amount found as land value based on agreement of parties where party aggrieved failed to raise the error by notice of appeal). Thus, because the BOE failed to preserve its challenge to the BTA's recency finding regarding the 2014 sale, we have no jurisdiction to decide the issue.

## CONCLUSION

{¶ 33} Accordingly, we reverse the decision of the BTA and reinstate the value found by the BOR for tax year 2012.

Decision reversed.

O'CONNOR, C.J., and KENNEDY, FRENCH, O'NEILL, and FISCHER, JJ., concur.

DEWINE, J., concurs, with an opinion.

_____

**DEWINE, J., concurring.**

{¶ 34} I concur in the majority's judgment today and much of its analysis. The sale price was not indicative of value in this case because of the sale/leaseback arrangement.

**{¶ 35}** I part company with the majority, however, at its suggestion that a different rule would apply to a sale that comes after a sale/leaseback. The majority opines that for a subsequent sale, the sale price will be presumed to be the true value despite the leaseback arrangement. But if the initial sale does not reflect the true value of the property because of the leaseback arrangement, then neither should a subsequent sale of the same property subject to the same lease. In both instances, the economic value of the lease will impact the price that a willing buyer might pay on the open market.

**{¶ 36}** Consider a seller who, based upon internal financing considerations, chooses to enter into a sale/leaseback arrangement that provides for both an above-market sale price and above-market rents. (A perfectly reasonable and not uncommon way to obtain financing.) Under today's holding, we would not apply the *Berea* presumption to the initial sale because the sale price is skewed by the leaseback arrangement. *See Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13 ("when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes' "), quoting R.C. 5713.03. Now imagine that a short time later, the property (still subject to the same lease) is sold to another investor. Just like in the initial sale, the subsequent sale price would not reflect the true value of the property, because the sale price would be skewed by the favorable lease terms—indeed, it appears that this scenario occurred in the present case. It makes no sense to say that we will not apply the *Berea* presumption in the first instance but that we will apply it in the second.

**{¶ 37}** The distinction the majority draws arises from its attempt to reconcile its holding today with prior decisions of this court. *See AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, and *CCleveland OH Realty I, L.L.C. v. Cuyahoga Cty.*

12

*Bd. of Revision*, 121 Ohio St.3d 253, 2009-Ohio-757, 903 N.E.2d 622. The majority writes that these cases "establish that the sale price from the sale after the sale/leaseback transaction invokes the *Berea* rule, with the result that the price presumptively constitutes the value of the property." Majority opinion at ¶ 26. But the Ohio Constitution requires that property "be taxed by uniform rule according to value." Ohio Constitution, Article XII, Section 2. When it comes to economic realities and this constitutional requirement, *AEI* and *CCleveland* are irreconcilable with the majority's decision today. We should say so.

{¶ 38} Accordingly, I concur in the majority's opinion, except paragraphs 25 through 28.

――――――――――

Rich & Gillis Law Group, L.L.C., Kimberly G. Allison and Mark H. Gillis, for appellee Columbus City Schools Board of Education.

Baker & Hostetler, L.L.P., Edward J. Bernert, Trischa Chapman, and Ann Yackshaw, for appellant.

William A. Zapp, urging reversal for amicus curiae, Institute for Professionals in Taxation.

――――――――――