[Cite as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* 2020-Ohio-200.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Columbus City Schools<br>Board of Education et al., | : | |
| | : | |
| Appellants-Appellees, | | |
| | : | Nos. 19AP-204, 19AP-206 |
| v. | | 19AP-207, 19AP-208, 19AP-209 |
| | : | 19AP-210, 19AP-211 & 19AP-212 |
| Franklin County Board of Revision et al., | | (BTA Nos. 2017-278, 2017-279, |
| | : | 2017-280, 2017-293, 2017-295, |
| Appellees-Appellees, | | 2017-296, 2017-297, 2017-298) |
| | : | |
| (JDM II SF NATIONAL LLC and | | (REGULAR CALENDAR) |
| LSREF2 TRACTOR REO (DIRECT) LLC, | : | |
| | | |
| Appellees-Appellants). | : | |

---

D E C I S I O N

Rendered on January 23, 2020

---

**On brief:** *Rich & Gillis Law Group, LLC, Mark H. Gillis,* and *Karol C. Fox,* for appellee Columbus City Schools Board of Education. **Argued:** *Karol C. Fox.*

**On brief:** *Baker & Hostetler LLP* and *Edward J. Bernert,* for appellants JDM II SF National LLC and LSREF2 Tractor REO (Direct) LLC. **Argued:** *Edward J. Bernert.*

---

APPEALS from the Board of Tax Appeals

NELSON, J.

{¶ 1} Because we find that the Board of Tax Appeals ("BTA") in this property valuation matter disregarded instruction provided in statute and in precedent from the Supreme Court of Ohio, we will reverse its decision.

{¶ 2} These consolidated cases involve essentially the same State Farm office building property that was at issue in *Columbus City Schools Bd. of Edn. v. Franklin Cty.*

*Bd. of Revision*, 151 Ohio St.3d 100, 2017-Ohio-7578 (labeled "*State Farm I*" by the BTA). There, the Supreme Court found that the BTA had erred in relying on a sale/leaseback transaction that had transferred the property from the State Farm Mutual Automobile Insurance Company to an entity known as "Lone Star" in November 2013 as indicative of value. Observing that the "contemporaneous negotiation of the sale price and the lease terms, especially the rent payments, sets up a reciprocal relationship between these elements of the overall transaction" such that the terms of the transaction do not establish "market value" for the property, *id.* at ¶ 20, the Supreme Court reversed the BTA's reliance on the $25,092,326 sale price as the property's valuation for 2012 and reinstated a $14,000,000 valuation for that year.

{¶ 3} The matter at hand involves valuations for the next three years, 2013 through 2015. Relying on an April 2014 sale that moved ownership of the property from Lone Star (the owner for all of five months) to JDM II SF National LLC ("JDM"), the BTA set the value for each of those years at the newer sale price of $26,100,000. March 11, 2019 BTA Decision and Order at 7. That decision, consistent with the position of appellee the Columbus City Schools Board of Education, rejected the owners' appraised valuation of $13,200,000 (for 2015) and displaced Board of Revision decisions that had valued the property at $18,540,000 for 2013 (reflecting the county auditor's appraisal for that year, which was lowered in 2014 to $17,088,600), $25,092,400 for 2014 (the November 2013 sale price, as part of a broader portfolio sale), and $26,100,000 for 2015 (the April 2014 sale price, also as part of a broader portfolio sale). *Id.* at 2. Although Lone Star and JDM appeal as the successive property owners/lessors, they note without contradiction and as established in the record that State Farm (under the lease as assumed by JDM upon transfer of the property from Lone Star) is as to them the entity solely responsible for the payment of the real property taxes. Appellants' Brief at 5 and School Board Exhibit C, Section 3.1.

{¶ 4} That lease to State Farm of its office building runs for an initial term into November of 2028, with two five-year renewal options. Exhibit C at Basic Terms and Section 1.2. It establishes an " 'absolute net lease' " arrangement that makes the property " 'hands off' for the landlord." *See State Farm I* at ¶ 6 (citing testimony of Raymond P. Templet, Jr.); Exhibit C. Among other things, the lease provides that its base rent "shall be net to Landlord of all costs and obligations of every kind and nature whatsoever relating to

the Premises which shall be performed and paid by Tenant." Exhibit C at § 2.5. State Farm is to contract, in its own name, and pay for all utility services to the property, and for janitorial and security services. *Id.* at Article 6. State Farm further "assumes full responsibility for the condition, operation, repair, replacement, maintenance and management of the Premises," *id.* at Section 7.2, and "releases Landlord * * * from all claims for any damage or injury to the full extent permitted by Laws," *id.* at Section 10.3. And so on.

{¶ 5} JDM and Lone Star (together and except as particularly designated, "JDM") advance 12 assignments of error grouped and not separately argued under two propositions of law:

> [I.] As a matter of law, the Ohio Board of Tax Appeals * * * erred in using the sale price from the April 2014 sale of the subject property subject to a lease that followed a November 2013 sales-leaseback when the second sale exhibited the identical attributes that prompted the Supreme Court of Ohio to reject the use of the first sale price in [*State Farm I*].
>
> [II.] The BTA erred in rejecting the [Appellants'] Pickering Appraisals.

Appellants' Brief at iii.[1] JDM asks either that its appraisal values be adopted or that we "remand the matter for the BTA to determine the values consistent with R.C. 5713.03." *Id.* at 42.

---

[1] The specified assignments of error read: "1. The Ohio Board of Tax Appeals ('BTA') erred in accepting the sale price as determining true value. 2. The BTA failed to properly apply the decision of the Ohio Supreme Court in *Columbus City Schools Bd. of Edn. V. Franklin Cty. Bd. of Revision,* 151 Ohio St.3d 100, 2017-Ohio-7578, 86 N.E.3d 301 ("*State Farm I*") in determining the value of the subject property. 3. The BTA erred in using a sale price for determining value when that sale price exhibited the same defects for purposes of determining value that were present in the sale-leaseback rejected by the Supreme Court of Ohio in *State Farm I* with respect to the identical property. 4. The BTA erred as a matter of law by failing to properly apply the applicable provision of R.C. 5713.03, as amended, and the required use of the fee simple value to reach its determination of value. 5. The BTA erred in determining that Appellants should have provided an analysis of the market rents considering that the cost of demising the property prevented the income method from properly reflecting the highest and best use and thus the appropriate value, an issue never addressed by the BTA. 6. The BTA erred in determining a value that is not supported by the record. 7. The BTA failed to properly evaluate and/or discuss important testimony from Messrs. Templet, O'Malley, Pickering and Eberly establishing that the lease was sold and the sale price represented the value of the lease rather than the fee simple, especially considering the explicit testimony about the benefit to the purchasers and effect upon value arising from the legal commitment by State Farm Mutual Automobile Insurance Company to make payments to the owners of the property. 8. The BTA erred by failing to

{¶ 6} "An appellate court may reverse a BTA decision only 'when it affirmatively appears from the record that such decision is unreasonable or unlawful.' *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 157 (1991). Thus, legal conclusions are reviewed de novo. *Terraza 8, LLC v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 7; *see Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232 (2001) ('[W]e will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.'). As to factual findings, an appellate court may not substitute its judgment for that of the BTA. *Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420, 2004-Ohio-1749, ¶ 18. However, facts determined by the BTA must be supported by sufficient probative evidence. *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, ¶ 9." *Gallick v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 17AP-811, 2019-Ohio-485, ¶ 14.

{¶ 7} First, we dispense with any suggestion by JDM that the 2014 sale necessarily cannot provide an arm's length market value for the property simply because "the [sale] relationship was defined by the same lease" in *State Farm I* that was "central to the decision of JDM to buy the lease fee," and that the holding of *State Farm I* therefore directly and automatically dictates the result here. *See* Reply Brief at 13; Appellants' Brief at 32. We cannot accept that axiomatic argument because a majority of the Supreme Court has informed us that, at least under the law as it stood before statutory amendments that took effect in 2013, a sale subsequent to a sale/leaseback "presumptively constitutes the value of the property." 2017-Ohio-7578 at ¶ 26. On our reading of the decision, the holding of *State Farm I* does not automatically direct the result here: more analysis is necessary.

---

distinguish between motivation for a sale and proof that the transaction was the purchase of the lease rather than the fee simple when the explicit evidence showed that the lease and not the fee simple determined the price paid according to unchallenged testimony of the actual participants in both sales transactions. 9. The BTA erred in determining that the Appraisers should have applied and income approach considering that the highest and best use was of a single tenant owner-occupied building. 10. The BTA erred by failing to consider that the cost of demising the property precluded the use of the income method to provide a meaningful indication of value and that the mere recitation of rentals presented by Mr. Sprout did not support the conclusions of the BTA regarding the income method. 11. The BTA erred in failing to adopt the value derived from the sole appraisal submitted when that appraisal fairly reflected the value of the property. 12. The BTA erred in failing to disclose the basis for its findings and the evidence on which it relied to support its decision by substituting general statements, e.g. as to lack of credibility of the evidence and the BTA's conclusion that it found "nothing wrong" with evidence said to support the use of the sale price, thereby preventing this Court from determining whether the decision was reasonable and lawful and otherwise precluding this Court from performing its appellate role." *Id.* at 1-4.

{¶ 8} That analysis begins with the recognition that in 2012, "[t]he General Assembly made two significant changes" to the governing statute, R.C. 5713.03, that "went into effect on September 10, 2012" and consequently apply "to valuations for tax year 2013" and beyond. *Terraza*, 2017-Ohio-4415 at ¶ 15, 18. "First, it required county auditors to determine 'the true value of *the fee simple estate, as if unencumbered*, of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon.' * * * * And second, concerning recent arm's-length sales, it replaced *shall* with *may*: 'the auditor *may* consider the sale price * * * to be the true value for taxation purposes.' " *Id.* at ¶ 15. Thus, the statute now requires "valuation of 'the fee simple estate, as if unencumbered' * * * * regardless of whether the property at issue was the subject of a recent sale." *Id.* at 27 (adding at ¶ 33, 35-36 that property owner may present and BTA must consider evidence aimed at rebutting presumption that a recent sales price reflects true market value of property).

{¶ 9} The BTA's discussion here of the valuation question got off to a promising start. After rejecting the sale/leaseback deal of November 2013 as reflective of the property's market value, BTA Decision at 4, the BTA turned to "the rebuttable presumption" created by the March 2014 sale, *id.* at 5. It then acknowledged that JDM "argued that [the] $26,100,000 purchase price reflected the value of the [State Farm] lease * * *, which was in effect at the time of the sale. We proceed, therefore," the BTA wrote, "to evaluate the sufficiency of the property owners' evidence." *Id.*

{¶ 10} The BTA then stated that "consideration of the income stream derived from leasing real property is not an impermissible motivation" for purchase. *Id.* But no one had argued it was: rather, JDM had argued that the purchase price it paid was informed far more by the quality of the State Farm lease obligation it was acquiring than by the value of the real property and buildings.

{¶ 11} Continuing aside the point, the BTA observed that "nothing in the record indicates that consideration of the income stream was atypical of market participants interested in purchasing real property subject to triple net leases." *Id.* But while *consideration* of an income stream from property is not atypical, the record did reflect— just as in the words of the Supreme Court characterizing testimony with regard to the 2013 sale—that "[t]he characteristics of the underlying properties mattered little to the buyer's

evaluation of the deal;  'the majority of the diligence and focus and analysis * * * was on State Farm's credit [and] the actual terms of the leases.' " *State Farm I*, 2017-Ohio-7578 at ¶ 6; *compare* November 15, 2017 BTA hearing testimony of Tom O'Malley, C.O.O. of acquiring entity JDM parent at 23 ("Our investors really aren't interested in the buildings, in the properties, and the locations, they are interested specifically in who is the tenant, what is * * * their credit rating, how long is the lease, and what is my return going to be on my investment"), 25 ("what we're able to do is say you're really investing in State Farm, and your investment is the form of a bondable lease with a contractually obligated rent payment over ten years").  And the undisputed testimony was that the quality of the lease that was the object of the purchase was quite atypical.  *See, e.g.,* mortgage appraisal prepared by Cushman & Wakefield for March 2014 sale, School Board Exhibit 3 at 108 (quoting Executive Director of Capital Markets of Cushman & Wakefield, Louis Wolfowitz, that " '[t]here just aren't a lot of [these sorts] of leases out there' " to acquire).

{¶ 12} The BTA then concluded that because JDM "did not provide evidence of market rents," the BTA could not "independently determine whether the lease in place * * * was above market rents" and "[t]herefore" found "that the $26,100,000 sale of March/April 2014 is the best indication of the subject property's value."  BTA Decision at 6 (also discounting JDM's Pickering-Eberly appraisal reports as flawed for having failed to use an income approach to value and for having limited comparable sales analysis to "mostly vacant" properties).

{¶ 13} But the Supreme Court has been explicit that "the difference between actual rent and market rent is only one factor that might make an existing lease affect the sale price. * * * * [T]he amount of rent charged under a lease has to be considered in the context of at least two other factors:  the creditworthiness of the tenant and whether the lease at issue is a net lease, under which the tenant defrays the expenses relating to the real estate." *GC Net Lease @(3) (Westerville) Investors, L.L.C., v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 121, 2018-Ohio-3856, ¶ 10 (discussing "property occupied by J.P. Morgan Chase, as tenant under a 15-year net lease, paying rent that is at or below a market rate"). "The convergence of these circumstances," the Supreme Court continued, "could affect the price a buyer would pay for the property, possibly elevating it above what the same buyer would pay for the unencumbered fee-simple estate." *Id.*

{¶ 14} Addressing this point, albeit not citing *GC Net Lease*, the BTA found:

> [T]hough the property owners argued that the underlying lease reflected the value of State Farm's credit rating, it [sic] failed to substantiate such claim. The property owners failed to provide competent, credible, and probative evidence to demonstrate State Farm's credit rating and how such rating operates in the relevant market.

BTA Decision at 7.

{¶ 15} We find this characterization both of the argument and of the evidence rather mystifying. First, JDM's argument is more that State Farm's creditworthiness affected the purchase price of the property itself (as encumbered) than that the lease reflected State Farm's credit. Moreover, the record is replete with evidence of State Farm's AA credit rating. And while the influence is not precisely quantified if one disregards JDM's property appraisals, the uncontested evidence of record also reflects that State Farm's creditworthiness—in conjunction with the "absolute net" terms of the lease, which the BTA did not assess at all—did substantially affect the sale price relative to what it would have been had the property not been so encumbered. Although the BTA professed itself "mindful of our duty to independently determine the subject property's value," it did not attempt to account for that value differential. *Id.* at 7.

{¶ 16} Just to cite a few examples, record evidence of State Farm's credit rating can be found in the June 16, 2015 BTA hearing testimony of State Farm's Investment Officer Philip Reuter, JDM's Exhibit A:

- at 20 (State Farm has "no debt whatsoever" and "very good credit," making lease income streams "very valuable"); and

- at 26 (State Farm's "AA rating" is "one of the strongest credit ratings you can have as a corporation").

It also can be found in the testimony of Raymond Templet, captive asset manager for Lone Star, JDM's Exhibit A:

- at 46 (State Farm's credit rating is "extremely high. We consider it sterling credit. In that fact was a hallmark feature of the deal.").

It can be found in Mr. O'Malley's 2017 BTA hearing testimony:

- at 15 (State Farm has "an AA credit rating, there's almost none of them left anymore * * * [It] tells our investors that they are the highest level of probability of paying their rent, paying their obligations").

And it can be found in the Cushman & Wakefield appraisal, School Board Exhibit 3:

- at 88-89 ("State Farm is rated investment grade by Standard & Poor's," noting the "AA" credit rating and the 15-year lease term to November 2028); and

- at 108 (noting "excellent credit quality strength of the tenant").

The School Board in fact concedes here that State Farm is "a national creditworthy tenant * * * ."  Appellee's Brief at 27.

{¶ 17} As to how such a rating (in combination with the absolute net terms of the lease) works in the relevant market, there again was evidence other than the appraisals and it again was undisputed (and no appraisals were offered apart from those obtained by JDM or its lender).  The Supreme Court itself in *State Farm I* recited testimony that was reintroduced for purposes of this subsequent BTA determination, specifically noting that "Reuter explained that State Farm's high credit rating made the income stream of rent from such properties 'very valuable' to potential real estate investors.  He testified from his experience of transactions in which State Farm purchased real property that 'if a building is leased to an investment-grade credit tenant you're going to buy that, and it impacts the price that you're going to [be motivated to] pay for that particular asset.' "  2017-Ohio-7578 at ¶ 5.

{¶ 18} Other record evidence, to much the same effect, is found for example in Mr. Reuter's further testimony that "if you've got a long-term lease with an investment-grade tenant[,] that is much more valuable than * * * a non-investment-grade tenant."  Exhibit A at 37.  And in Mr. Templet's testimony that as to the 2013 sale, "the majority of the value is in the lease and the credit of State Farm."  *Id.* at 46.  And in Mr. O'Malley's extensive testimony for JDM about the nature of the "absolute triple net lease" under which the

"tenant is responsible for virtually a hundred percent of the building" and for which the length of the lease is "really important," with the lease being a "long term, almost bond like investment." November 15, 2017 Tr. at 13, 17-18; *see also id.* at 20 ("we get to go to our investors, and say AA credit, bondable net lease, doesn't matter what happens, as long as State Farm is paying their obligations we get our rent, and it makes that investment even more secure").

{¶ **19**} Mr. O'Malley testified, without contradiction, that as to the 2014 portfolio sales, the particular State Farm leases were the "key issue" in the transactions. The Cushman & Wakefield appraisal for JDM's lender, put into evidence by the School Board but not analyzed by the BTA decision (which simply noted its submission, *see* BTA Decision at 3), similarly makes the point that the capitalization rate of 6.00 that it used in its valuation, "does reflect the excellent credit quality strength of the tenant," and "the 15-year length of the lease term," as well as "the physical quality of the subject property." Exhibit 3 at 108. Significantly, that appraisal valued "the leased fee interest of the subject property," *not* the property as unencumbered. *Id.* at 1.

{¶ **20**} On this record, then, we find that the BTA's conclusion that JDM "failed to provide competent, credible, and probative evidence to demonstrate State Farm's credit rating and how such rating operates in the relevant market" to be contrary to and not supported by the evidence presented. And because such evidence of "the creditworthiness of the tenant and whether the lease at issue is a net lease" can affect (and in this case is said by multiple witnesses actually to have affected) the sale price of the property, *compare GC Net Lease*, 2018-Ohio-3856 at ¶ 10—and especially without any contrary evidence having been adduced, *see* November 15, 2017 Tr. at 108-09 (School Board's lone expert, who reviewed appraisals procured by JDM, "didn't do any valuation in this case" and did not undertake the minimum work required to perform an appraisal)—the BTA should have considered that evidence in determining whether JDM had rebutted the presumption that the 2014 sale established the value of the property as unencumbered. *See, e.g., Bronx Park S. III Lancaster, L.L.C. v. Fairfield Cty. Bd. of Revision*, 153 Ohio St.3d 550, 2018-Ohio-1589, ¶ 12 (taxing authorities must consider "not just the sale price but also any other evidence the parties present that is relevant to the value of the unencumbered fee-simple

estate"). But having denied the existence of such evidence, the BTA did not engage in that necessary analysis.

{¶ 21} Indeed, it is not entirely clear that the BTA, even in acknowledging its duty independently to determine the property's value, focused on the need to determine that value "as if unencumbered" by the particular lease that JDM assumed through its purchase. *Compare* R.C. 5713.03; *Terraza,* 2017-Ohio-4415. The BTA's decision rather studiously avoids that statutory phrase. The BTA's apparent suggestion, meanwhile, that analysis would be informed by study of "market participants interested in purchasing real property subject to triple net leases," BTA Decision at 5, while parallel to certain comments by the School Board's expert (who also critiqued JDM's appraisals for not mentioning in discussion of comparable sales a certain sale/leaseback transaction, *compare* November 15, 2017 Tr. at 94 (Sprout testimony) *with State Farm I*, which had been decided before that hearing), does not explicitly recognize or account for any need to assess those comparable properties "as if unencumbered."

{¶ 22} In much the same vein, but more problematically still, the BTA's decision concludes by (mis)quoting *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 470, 2016-Ohio-757, ¶ 20, as saying that " '[a]n appraiser's opinion of value is not enough on its own to overcome the validity of a sale price.['] " BTA Decision at 7. That decision pre-dated *Terraza*. More importantly, it related to tax year 2009, well before the amendment to R.C. 5713.03 that mandates valuation of a property "as if unencumbered" took effect at the end of 2012. Consequently, it went on to state, immediately after the misquoted sentence: "That would, of course, violate the *Berea* precept * * *." 2016-Ohio-757 at ¶ 20 (then explaining that appraisals could rebut the sale price presumption by calling into question the recency or the arm's-length character or voluntariness of the sale). Similarly, the Supreme Court decision that *did* use the language the BTA misattributes, *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 449, 2018-Ohio-2046, related to a tax year 2011 valuation and proceeded explicitly "pursuant to *former* R.C. 5713.03." *Id.* at ¶ 2, 12 (emphasis added). But the amendment analyzed in *Terraza* significantly changed that approach: "the statutory amendment overrides *Berea*," and "means that the BTA had to determine the value of the subject property's unencumbered fee-simple estate." *Terraza*, 2017-Ohio-4415 at ¶ 26, 39.

*Terraza* confirms that the presumption created by a recent arms-length sale no longer is irrebuttable even apart from issues of recency or arms-length dealings, and that the BTA errs by not considering evidence presented to counter the presumption, there including appraisal evidence. *Id.* at ¶ 36.

{¶ 23} Our concern that the BTA's approach here does not embrace the legally required "as if unencumbered" standard is further heightened by its seemingly inapt choice of quotation from *Meijer Stores L.P. v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, ¶ 23, fn. 4, that " '[a] "fee simple" may be absolute, conditional, or subject to defeasance, but the mere existence of encumbrances does not affect its status as fee simple.' " BTA Decision at 6. That sentence in *Meijer* came immediately after the Court's observation that "[t]he appraisal industry uses the term 'fee simple' to refer to unencumbered property – or to property appraised as if it were unencumbered. This distinction is not one recognized by the law, however." 2009-Ohio-3497 at ¶ 23, fn. 4 (citation omitted). That statement was correct, of course, in 2009, but the 2012 amendments explicitly recognized precisely that distinction and directed valuation of property for these tax purposes "as if unencumbered." (That does not mean that the property cannot be valued in light of what market rental rates or other normal, market-rate income streams it would bring, *see, e.g., Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, but rather that valuation of the property "as if unencumbered" must not reflect variation from that value attributable, upward or downward, to the effect of any specific encumbrance attached to it. *See Menlo Realty Income Properties 28, LLC v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-316, 2019-Ohio-4872, ¶ 4.) Thus, for example, the observation in *Meijer* at ¶ 23 that "[w]e have held that a recent arm's-length sale price should not be adjusted to remove the economic effect of such encumbrances when they exist," does not withstand the subsequent statutory amendments assessed by *Terraza* and its progeny.

{¶ 24} To any extent that the BTA relied on inapplicable pre-amendment modes of analysis to disregard JDM's proffered appraisals, that would be a mistake of law. In any event, however, the BTA's failure to recognize and account in the correct statutory context for the uncontested evidence relating to the *GC Net Lease* factors of "creditworthiness of the tenant and [that] the lease at issue is a net lease," compels reversal and remand. Here,

as in *Terraza*, "the BTA * * * did not fulfill its role as fact-finder concerning all the evidence before it" in considering whether the presumption created by the recent sale is overcome. The BTA needs to perform the proper analysis cognizant of all the evidence presented to it.

{¶ 25} As recent Supreme Court decisions have emphasized, " 'the General Assembly [by amending R.C. 5713.03 * * *] has directed taxing authorities to consider not just the sale price but also any other evidence the parties present that is relevant to the value of the unencumbered fee-simple estate.' " *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-3855, ¶ 14, adding bracketed words to quotation from *Bronx Park*, 2018-Ohio-1589 at ¶ 12; *see also, e.g., Spirit Master Funding IX, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 155 Ohio St.3d 254, 2018-Ohio-4302 (same) (citations omitted). We therefore vacate the BTA's March 11, 2019 decision and remand the matter to it for determination of the 2013-2015 valuations on the property consistent with statute and governing precedent.

*Decision vacated; cause remanded.*

BRUNNER and BEATTY BLUNT, JJ., concur.

_____